**United States District Court**
For the Northern District of California

**E-FILED on**   8/4/08

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BOB LEWIS VOLKSWAGEN,<br><br>    Plaintiff,<br><br>    v.<br><br>UNIVERSAL UNDERWRITERS GROUP, UNIVERSAL UNDERWRITERS INSURANCE COMPANY; and DOES 1 through 50, inclusive,<br><br>    Defendants. | No. C-06-07332 RMW<br><br>ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 18, 25]** |

       Plaintiff and insured Bob Lewis Volkswagen ("Bob Lewis") has sued defendant insurer Universal Underwriters Insurance Company ("Universal") for failing to provide the full limits of defense costs available under the Employment Related Defense ("ERD") coverage issued to Bob Lewis by Universal. Bob Lewis seeks payment of defense costs under this coverage for claims filed by 46 of its current and former employees ("the underlying action").[1]

       The parties have submitted cross-motions for summary judgment, or in the alternative summary adjudication, of Bob Lewis's claims. Bob Lewis moves for partial summary judgment that

---

[1] The number of claimants in the underlying action is unclear. However, Universal agreed to "accede to plaintiff's method of counting." Def.'s Reply to Mot. for SJ and Pltf.'s Cross-Mot. for SJ, p.1, fn. 1.

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-07332 RMW
MAG

(1) each arbitration claimant has a separate "suit"; (2) that the arbitration demands triggered 46 "per suit" limits; and (3) Universal's policy interpretation is unreasonable as a matter of law.  Universal moves for summary judgment on the ground that it has fulfilled its obligations under its policy by paying a single policy limit of $10,000 for defense expenses incurred in the underlying action.  The primary issue between the parties is whether the actions filed by 46 claimants that were arbitrated in one proceeding constitute a single suit or multiple suits under the policy.

## I. BACKGROUND[2]

### A.     The Policy

Universal insured Bob Lewis, an automobile dealership in San Jose, under a multi-part insurance policy under which one of the policy coverages was an ERD benefit.  The ERD benefit provided up to $10,000 per suit for defense costs incurred in labor disputes involving Bob Lewis's employment practices.  Decl. Thomas Bohm Supp. Def's Mot. Summ. J. ("Bohm Decl."), Ex. A at U442, U627.

The ERD provision provides:

> WE will pay all defense costs actually incurred to defend any SUIT asking for CUSTOMER COMPLAINT DEFENSE and EMPLOYMENT RELATED DEFENSE when such insurance is included in the declarations.  We may investigate and, at OUR option, settle any SUIT.  If WE settle a SUIT the settlement will be at OUR expense except for the applicable deductible.  Otherwise, all court costs, settlements and DAMAGES assessed against YOU will be at YOUR expense.

*Id.*, Ex. A at U675.

The policy defines both "EMPLOYMENT RELATED DEFENSE" and "SUIT."

> "EMPLOYMENT RELATED DEFENSE" means *any SUIT filed against YOU during the Coverage Part period by or on behalf of any employee* arising out of YOUR employment practices, other than as a result of an OCCURRENCE or as would be covered by a Workers Compensation or Employers Liability Policy.

*Id.*, Ex. A at U676 (emphasis added).

> *"SUIT" means a civil action for DAMAGES, including arbitration or mediation to which the INSURED must submit or submits with OUR consent.  A class action is one*

---

[2] For purposes of the present motion, the facts are undisputed and the parties have stipulated as to the authenticity of the documents presented to the court in support of each party's position.  As discussed below in section II.B, plaintiff has requested a continuance under Fed. R. Civ. P. 56(f) as to the court's determination on plaintiff's bad faith claim, contending that additional discovery on plaintiff's claim handling process is necessary prior to final resolution of the bad faith claim.

United States District Court
For the Northern District of California

> *SUIT*. SUIT does not mean administrative actions (except under INJURY Group 6 and EMPLOYMENT RELATED DEFENSE) or equitable actions.

*Id.*, Ex. A at U677-678 (emphasis added).

The policy includes a limit to the ERD benefit that applies "per SUIT" as follows:

> (3) With respect to . . . EMPLOYMENT RELATED DEFENSE, the limit per SUIT stated in the declarations for such coverage, in defense costs for any one SUIT, but not for more than the annual aggregate limit in the declarations for all such defense costs during the Coverage Part period.

*Id.*, Ex. A at U682. The specified "per SUIT" limit is $10,000; the "annual aggregate limit" is $500,000. *Id.*, Ex. A at U627.

## B.  Background Leading to the Multi-Claimant Arbitration

In February 2004, according to Universal, 15 current and former Bob Lewis employees each served a document entitled "Demand for Arbitration before JAMS"[3] on counsel for Bob Lewis. All of these 15 arbitration demands listed the claimant as "Class Action: Wilson v. Bob Lewis VW Inc." but each demand listed the name and address of the particular Bob Lewis employee making the demand in the space on the form for the claimant's address. Bohm Decl., Ex. B. Each of these 15 arbitration demands had an identical description of the "Claim and Relief Sought By Claimant," namely that "charges cost salesmen thousands of dollars in unpaid commissions" and states that the "Suit names all former and current sales staff of [Bob Lewis]" *See, e.g., id.* at U38-9.

On March 18, 2004, 41 current and former Bob Lewis employees, including those who had filed arbitration demands in February, served an "Amended Demand for Arbitration" seeking back pay and related relief. Stip. Re: Authenticity of Docs. Supp. Def.'s Mot. Summ. J. ("Def. Stip"), Ex. A. Arbitration demands on behalf of additional plaintiffs were served on Bob Lewis in April and June 2004. Def. Stip., Exs. C-D. These additional plaintiffs were named in the "Second Amended Demand for Arbitration" dated March 23, 2006. *Id.*, Ex. V. The amended demand omitted any allegations of a representative, class or mass action. *Id.*, Ex. Q.

Bob Lewis and the claimants stipulated to refer their claims to arbitration. The stipulation, captioned "In re Arbitration Between the Parties" states: "WHEREAS there is a controversy between

---

[3] The parties later arbitrated the matter before an arbitrator selected by the Santa Clara Superior Court rather than JAMS.

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-07332 RMW
MAG                                                                 3

the parties that is subject to mandatory binding arbitration . . . The parties to the within action hereby stipulate that all such claims by either party shall be submitted to binding arbitration." *Id.*, Ex. B. Bob Lewis and the claimants proceeded to arbitration, during which proceedings the claimants submitted consolidated discovery and briefing. Exs. E-F, I-P, S-T, W-Z.

### C. Universal's Coverage Determination

On April 19, 2004, after Universal received claimants' Amended Demand for Arbitration from Bob Lewis, Bob Lewis was verbally advised by Universal employee Susan Hopkins that Universal's coverage position was that coverage was limited to a total limit of $10,000 for defense costs and that Bob Lewis would be responsible for any attorney's fees and costs exceeding $10,000. Bohm Decl., Ex. C. On April 22, 2004, Universal sent a letter to counsel for Bob Lewis confirming that coverage position, stating that although Universal originally treated the 15 individual demands for arbitration as 15 separate claims, it considered all the claimants to be involved in a single suit when it received the Amended Demand for Arbitration. *Id.*, Ex. D. Universal reasoned that the Amended Demand for Arbitration "is attempting to establish a class action by virtue of pleading Bus. & Prof. Code Section 17200 and the Labor Code Section 2698, also know [sic] as the Private Attorneys General Act of 2004) [sic] on behalf of these 41 employees." *Id.* The letter also stated, "Please note under the SUIT definition, 'A class action is one SUIT' as such the coverage extended to the insured is for one suit." *Id.*

## II. ANALYSIS

### A. Breach of Contract Claim

The first step in determining the scope of coverage of an insurance provision involves an examination of the policy's language. As the fundamental goal of contractual interpretation is to give effect to the parties' mutual intent, "clear and explicit" contractual language governs. *CDM Investors v. Travelers Casualty & Surety Co.*, 139 Cal. App. 4th 1251, 1256 (2006) (citing *Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998)). There is no room for judicially-created rules unrelated to policy language. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992); Cal. Civ. Code §§ 1636, 1638. It is settled law in California in resolving a question of policy interpretation, the court is to look "first to the language of the

1 insurance policy in order to ascertain its plain meaning as a layperson would understand it."
2 *Prudential Ins. Co. of Am., Inc. v. Super. Ct. of Santa Cruz County*, 119 Cal. Rptr. 2d 823, 833
3 (2002).

4 "Ambiguity exists when an insurance policy provision is capable of two or more
5 constructions, both of which are reasonable." *CDM Investors,* 139 Cal. App. 4th at 1256 (citations
6 omitted). However, "[c]ourts do not engage in forced construction of insuring clauses to find
7 coverage, nor will they strain to create an ambiguity where none exists." *Ray v. Valley Forge Ins.
8 Co.*, 77 Cal. App. 4th 1039, 1044 (1999) (citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1,
9 16, 18-19 (1995)). Neither "disagreement concerning the meaning of a phrase" nor "the fact that a
10 word or phrase isolated from its context is susceptible of more than one meaning" makes that word
11 or phrase ambiguous. *CDM Investors,* 139 Cal. App. 4th at 1256 (citations and alterations omitted).
12 "[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the
13 circumstances of that case, and cannot be found to be ambiguous in the abstract." *Id.*

14 "If an asserted ambiguity is not eliminated by the language and context of the policy, courts
15 then invoke the principle that ambiguities are generally construed against the party who caused the
16 uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of
17 coverage." *Id.* at 1256-57 (alteration in original, citations and quotation marks omitted).

18       **1.    Ambiguity**

19 The first inquiry is whether the language in question is "clear and explicit" or capable of two
20 or more reasonable constructions. The policy provides that Universal owes an employment related
21 defense for "any SUIT filed against YOU . . . by *any employee* arising out of YOUR employment
22 practices." *Id.,* Ex. A at U676 (emphasis added). This language suggests that each claim by an
23 employee triggers the obligation to provide an employment related defense for that claim. However,
24 Universal contends that where a number of parties file one multi-party action, or make a multi-party
25 arbitration demand such as the one in this case, there is only "one suit" and the coverage limit is on a
26 per suit and not a per claimant basis. Universal relies on the policy's definition of "suit," specifically
27 that "'SUIT' means a civil action for DAMAGES, including arbitration or mediation to which the
28

INSURED must submit or submits with OUR consent. A class action is one SUIT." *Id.,* Ex. A at U677-78.

Universal's position has some appeal. However, the way it framed the issue to be decided misdirects the inquiry. Universal says "[t]his insurance coverage action presents an inordinately simple question: does a single arbitration proceeding with forty-five claimants constitute one arbitration or forty-five arbitrations?" Def's Mot. Summ. J, 1:16-17. It is not clear that the language of the policy is intended to define all multi-party actions as "one suit." The policy does not say that "a suit" includes multi-party actions, or that regardless of the number of plaintiffs, the coverage limit is $10,000. Suit could reasonably be construed to mean a civil action or claim brought by an employee for individual damages arising out of Bob Lewis's employment practices whether that action or claim is filed separately or part of a multi-party action.

Universal relies heavily on the language that a "class action is one SUIT" to support its position that there is only "one suit" in this case. However, although the 15 original separate demands for arbitration listed as claimant "CLASS ACTION: WILSON V BOB LEWIS V. INC.," Wilson did not pursue a class action and the later amended demands for arbitration did not use the term "class action." Universal argues that a layperson would have understood the class action language to be exemplary, indicating that a multi-plaintiff action is still "one SUIT" even if it is not a class action. What Universal apparently treated as the equivalent of a class action are two of each plaintiff's twelve claims, specifically the claim as a private attorney general for damages under Cal. Labor Code sections 2968 et seq. and the claim for the disgorgement of profits under Cal. Bus. & Prof. Code section 17200 et seq. However, if Universal intended a consolidated, multi-party action to be considered as only one suit, it would seem logical that it would have said that "an action or arbitration involving multiple claimants constitutes one SUIT" as opposed to the more restrictive statement that "[a] class action is one SUIT." Universal's underwriters presumably knew that claims under Cal. Labor Code sections 2968 *et seq.* and Cal. Bus. & Prof. Code Section 17200 are not class actions.

Bob Lewis argues that an ordinary person would have understood the "class action" language to be restrictive rather than exemplary, indicating that the only multi-plaintiff action that constitutes

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-07332 RMW
MAG                                                6

"one SUIT" would be a class action. Bob Lewis submits that each claimant in the underlying action maintains a separate suit irrespective of how many actions were actually filed (so long as that action is not a class action). In support of this argument, Bob Lewis contends that *Gray v. Zurich Ins. Co.*, 65 Cal. 2d. 263 (1966), stands for the proposition that the form of the pleading cannot impact an insurer's duty to defend. Here, according Bob Lewis, because the form the action, specifically whether to submit individual or consolidated arbitration demands, was the claimants' choice, *Gray* precludes that choice from being used to limit Universal's defense cost coverage. Plf's Opp'n at 3-5.

Bob Lewis's interpretation of *Gray* extends beyond its holding. *Gray* concerned the interpretation of an insurer's duty to defend. It stated that the form in which a plaintiff chose to frame a cause of action against an insured could not negate an insurer's duty to defend a claim that would potentially be covered. In essence, the inquiry in *Gray* is, as Universal suggests, whether an insurer has a duty to defend. Here, there is no dispute that Universal owed a duty to defend. The question is to what extent Universal is required to pay defense costs given that claimants and Bob Lewis elected to pursue their claims in one arbitration proceeding. Although *Gray* does not mandate adoption of Bob Lewis's position, Bob Lewis's view that the provision in question can be interpreted to treat each claimant's separate set of claims in a multi-party action as one suit, unless the multi-party action is a class action, is reasonable. The policy does not state that a single proceeding is one suit regardless of the number of claimants and claims. It also seems nonsensical that where the risk covered by the policy has occurred, the claimants could affect the coverage afforded to the insured by choosing to consolidate their claims as opposed to filing or pursuing them separately. Therefore, based upon the principle that ambiguities in insurance policies are to be construed in favor the insured, the ERD benefit must be construed to provide a $10,000 defense limit to each claimant's arbitration demand.

**2.      Consolidation**

Bob Lewis also argues that because the actions were merely consolidated, each claimant's action retains its separate character and is thus a separate suit under the policy. Under California law, "consolidation of separate arbitrations does not make a party to one a party to the other," *Garden Grove Community Church v. Pittsburgh-Des Moines Steel Co.*, 140 Cal. App. 3d 251, 265

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-07332 RMW
MAG                                      7

(1983), and even when claims are consolidated for purposes of arbitration, the claimants nevertheless maintain independent claims and the consolidation does not cause the claimants to become a single party. *Demirgian v. Superior Court*, 187 Cal. App. 3d 372, 377 (1986). Bob Lewis contends this means that each claimant's claim "retained its individual character" following consolidation, such that each claimant maintained a suit under the policy language.

The Ninth Circuit has also considered the definition of consolidation:

> "Consolidation" as a term of legal procedure is generally used in three different contexts: (1) when several actions are stayed while one is tried, and the judgment in the case tried will be conclusive as to the others; (2) when several actions are combined and lose their separate identities, becoming a single action with a single judgment entered; and (3) when several actions are tried together, but each suit retains its separate character, with separate judgments entered.

*Schnabel v. Lui*, 302 F.3d 1023, 1035 (9th Cir. 2002) (citing 9 Wright & Miller, Fed. Practice & Procedure: Civil 2d § 2382 (1995)). Bob Lewis identifies this action as being of the third type: several actions tried together but each suit retaining its separate character.

In *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933), the Supreme Court examined consolidation under 28 U.S.C. § 734, which has since been repealed and replaced by Federal Rule of Civil Procedure 42(a). Under the statute, "consolidation was permitted as a matter of convenience and economy in administration, but did not merge the suits into a single cause, nor change the rights of the parties, nor make those who are parties in one suit parties in another." *Schnabel*, 302 F.3d at 1035. Although the Ninth Circuit has ruled that *Johnson* does not apply for purposes of finality of judgment on appeal, it has also stated that *Johnson* remains good law with respect to consolidation for other purposes. *Id.* at 1036; *see also Continental Airlines v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n.1 (9th Cir. 1987) (for purposes of diversity jurisdiction, consolidation of cases does not make parties in one suit parties in another); *In re U.S. Financial Securities Litig.*, 609 F.2d 411, 428 n.58 (9th Cir. 1979) (discretionary consolidation under Rule 42 cannot alter right to jury trial); *Geddes v. United Financial Group*, 559 F.2d 557, 561 (9th Cir. 1977) (consolidation for purposes of discovery does not merge suits into single cause of action). Although examining consolidation in the context of the Federal Rules of Civil Procedure, these cases provide support to Bob Lewis's argument that each employee's claims remain a separate suit even after being voluntarily consolidated for arbitration purposes.

ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT—No. C-06-07332 RMW
MAG                                                8

1    Nevertheless, the court must examine the disputed provision in the context of the policy.
2 The impact of the "per SUIT" limit in the policy is not to consolidate claims into a single,
3 inseparable cause of action for purposes of trial or appeal, rather it is to set a limit on the ERD
4 benefit based on the number of suits that are commenced against the insured.  Universal points out
5 that the Oregon court of appeal in construing a similar provision determined that Universal was only
6 obligated to pay two policy limits rather than nine where nine complaints were severed from two
7 original complaints.  *Fredericks v. Universal Underwriters Ins. Co.*, 915 P.2d 472, 477 (Ore. App.
8 Ct. 1996).  The court in *Fredericks* stated "[t]he policy language is clear.  The limits are based on the
9 number of lawsuits, not on the number of people who claim injury." *Id.  Fredericks*, however, dealt
10 with the question of whether severed claims which came into existence after the policy period
11 expired related back to the original two claims which were brought during the policy period so as to
12 allow nine rather than two defense cost limits.  The court held they did not and the carrier owed
13 defense costs only for the two suits brought in the policy period.  The instant case does not raise a
14 question as to whether the claims were brought during Bob Lewis's coverage period, nor does
15 *Fredericks* apply California insurance law.  Therefore, it does not impact the conclusion in this case.

**B.    Breach of the Covenant of Good Faith and Fair Dealing and Bad Faith Claims**

17    Plaintiff seeks summary adjudication that Universal's policy interpretation is unreasonable as
18 a matter of law; defendant seeks summary adjudication as to plaintiff's entire bad faith claim.  As an
19 initial matter, the parties agreed, pursuant to the suggestion of the court, to stay discovery on
20 plaintiff's claim for bad faith in advance of the instant cross-motions.  This arrangement requires that
21 plaintiff's factual allegations regarding defendant's alleged bad faith be regarded as true, even in the
22 absence of admissible evidence.  Plaintiff contends that if the court does not grant its motion for an
23 adjudication that Universal's coverage position is unreasonable as a matter of law, it should grant
24 plaintiff a continuance for further discovery under Fed. R. Civ. P. 56(f).
25    An insurance policy is a contract to provide certain benefits enumerated in the policy terms.
26 "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and
27 its enforcement."  *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).  This principle
28 applies equally to insurance policies.  *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.

4th 390, 400 (2000). To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must show: "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). The mistaken or erroneous withholding of policy benefits, if reasonable or based on a legitimate dispute as to the insurer's liability under California law, will not expose the insurer to liability for bad faith. *Morris v. Paul Revere Life Ins. Co.*, 109 Cal. App. 4th 966, 977 (2003) ("As long as the insurer's coverage decision was reasonable, it will have no liability for breach of the covenant of good faith and fair dealing. An insurer which denies benefits reasonably, but incorrectly, will be liable only for damages flowing from the breach of contract, i.e., the policy benefits.").

"[B]efore an [insurer] can be found to have acted tortiously, *i.e.*, in bad faith, in refusing to bestow policy benefits, it must have done so 'without proper cause.' " *Morris*, 109 Cal. App. 4th at 973 (citing *California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal. App. 3d 1, 54-55 (1985)). "[T]he ultimate test of [bad faith] liability in the first party cases is whether the refusal to pay policy benefits was unreasonable." *Id.* (citing *Austero v. National Cas. Co.*, 84 Cal. App. 3d 1, 32 (1978), *overruled on other grounds in Egan v. Mutual of Omaha Ins. Co*., 24 Cal.3d 809, 824 (1979)); *see also Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (2001). The reasonableness of an insurer's claims handling is a question of fact. *Carlton v. St. Paul Mercury Insurance Co.*, 30 Cal. App. 4th 1450, 1456 (1994). Although it appears that Universal's incorrect denial of benefits was based upon a legitimate dispute as to the limits of Universal's obligation under the ERD provision of the subject policy, Bob Lewis is entitled to a reasonable period of time in which to undertake discovery focused on the bad faith issue. The court thus grants Bob Lewis's request for a continuance under Rule 56(f) and continues the hearing to December 5, 2008. Bob Lewis must file any supplemental opposition to Universal's motion by November 10, 2008 and Universal must file any supplemental reply by November 21, 2008.

**III. ORDER**

For the foregoing reasons, the court:

1. denies Underwriters's motion for summary judgment on Bob Lewis's claims for breach of contract;

2. grants Bob Lewis's motion for summary adjudication on Bob Lewis's claim that Universal breached its contractual obligation by treating the claims made by the 46 employee claimants as one suit rather than 46 suits which triggered 46 per suit limits; and

3. continues the hearing on Universal's motion for summary judgment on Bob Lewis's bad faith claim until December 5, 2008 with supplemental evidence and briefing due from Bob Lewis by November 10, 2008 and from Universal by November 21, 2008.

DATED: 8/4/08

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Bradley A. Bening        bab@wsblaw.net
Ellyn Elizabeth Nesbit   een@wsblaw.net

**Counsel for Defendants:**

Sonia Renee Martin       smartin@sonnenschein.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   8/4/08                              /s/ MAG
                                          **Chambers of Judge Whyte**